IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | |
|---|---|
| JEREMY R. ZUDELL, | CASE NO. 1:21-CV-01520-DCN |
| Plaintiff, | JUDGE DONALD C. NUGENT<br>UNITED STATES DISTRICT JUDGE |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE<br>CARMEN E. HENDERSON |
| Defendant, | **REPORT AND RECOMMENDATION** |

## I. Introduction

Plaintiff, Jeremy Zudell, seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is recommended that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On June 1, 2020, Zudell filed applications for SSI and DIB, alleging a disability onset date of July 27, 2018. (ECF No. 9, PageID #: 212, 228). The applications were denied initially and upon reconsideration, and Zudell requested a hearing before an administrative law judge ("ALJ"). (ECF No. 9, PageID #: 165). On March 15, 2021, an ALJ held a hearing, during which Zudell, represented by counsel, and an impartial vocational expert testified. (ECF No. 9, PageID

1

#: 67). On March 31, 2021, the ALJ issued a written decision finding Zudell was not disabled. (ECF No. 9, PageID #: 48). The ALJ's decision became final on June 9, 2021, when the Appeals Council declined further review. (ECF No. 9, PageID #: 38).

On August 5, 2021, Zudell filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 12, 15). Zudell asserts the following assignments of error:

> (1) The administrative law judge failed to account for the side effects of medications in his evaluation of residual functional capacity.
>
> (2) The administrative law judge's reasons for not finding the opinion of treating nurse specialist, Lisa Basilli, persuasive is in error.

(ECF No. 11 at 16, 19).

### III. Background

#### A. Relevant Hearing Testimony

Zudell testified to the following at his hearing. Zudell alleges mental impairments only. (ECF No. 9, PageID #: 78). Zudell is unable to work because his medication makes him "very tired," and he suffers from anxiety. (ECF No. 9, PageID #: 78). He lives with his mom who reminds him to perform self-care and take his medications. (ECF No. 9, PageID #: 78–79). His mom also manages the money because he is unable to. (ECF No. 9, PageID #: 84). Zudell visits a friend every few weeks. (ECF No. 9, PageID #: 79). He spends his days watching tv, exercising, or just laying in bed. (ECF No. 9, PageID #: 79). He often falls asleep watching tv. (ECF No. 9, PageID #: 78). Zudell has a short attention span and has trouble remembering things. (ECF No. 9, PageID #: 82).

B. **Relevant Medical Evidence**

The ALJ summarized Zudell's health records and symptoms:

> Based on treatment notes from Firelands Counseling & Recovery and Veterans Administration Medical Center, the claimant has been diagnosed with and treated for bipolar disorder (depressed and borderline personality disorder for which he has responded amelioratively to Depakote and Seroquel (Ex. B1F, p. 5; B2F, pp. 9-10). The claimant has been diagnosed with an anxiety disorder as well (Ex. B2F, p. 10).
>
> According to records [from] a note from January 2021, the claimant reported that the addition of Cogentin to his medication regimen resulted in an improvement in his mental clarity and thought content, and he denied side effects (Ex. B9F, p. 10). . . . Despite the claimant's mental impairments, he has maintained his Class A commercial driver's license throughout this adjudicating period (Ex. B2F, p. 14). He has a high school education and he has been looking for work in various industries, including manual labor, construction, and commercial driving with the assistance of a Vocational Rehabilitation Counselor at the Veterans Administration Medical Center, as evidenced by notes from April 21, 2020 and May 7, 2020 (Ex. B2F, pp. 14, 27). On June 1, 2020, the claimant reported that he was working a part-time non-SGA level job as a masonry worker, but he endorsed that the job situation during COVID-19 was hampering his ability to find full-time work (Ex. B1F, p. 5). . . .
>
> After the claimant was hospitalized in August 2017, the evidence indicates that the combination of medication, individual counseling, and group therapy helped improve his mental functioning and he was hopeful again about looking for work (Ex. B5F, pp. 3-4, 60). The claimant had roommates that he did not like and he wanted them to move out once he was released, suggesting that he had clear judgment and insight about positive and negative influences on his mental functioning and his life (Ex. B5F, p. 60). With treatment, the claimant has reported feeling better and presenting with a positive and optimistic mood with decreased depression, decreased agitation, decreased irritability, and no mania (Ex. B1F, p. 5). The claimant has reported that he was "very happy" with his vocational rehabilitation counselor Brandon Wray (Ex. B2F, p. 10). The claimant was seeking full-time jobs that accommodated the effects of his medication, which further established his ability to manage himself in work-related social situations (Ex. B2F, p. 27). He reported that his "anxiety has gone

3

down quite a bit at a 3 out of 10 on the anxiety scale" (Ex. B2F, p. 10). He did not report any issues with his social relations, but he did say that he was "working on a different housing situation" (Ex. B2F, p. 10). . . .

The claimant has not reported any concentration, persistence, or pace issues apart from the fact that he would prefer a second shift position from 2 PM to 11 PM preferably due to side effects from medication (Ex. B2F, p. 27). . . .

On August 14, 2017, his grandmother notified urgent care services after she recognized that the claimant was planning to act on his suicidal ideations (Ex. B5F, pp. 3-4). Unfortunately, the claimant endorsed difficulties with his relationship with his grandmother who visited him in the hospital and he insisted that she leave, which she did eventually (Ex. B5F, p. 37). The claimant did have friends visit him, which was "pleasant" (Ex. B5F, pp. 37-38). The claimant was not taking any psychotropic medications at the time and he did not report any previous psychotropic medications (Ex. B5F, p. 4). In 2020, the claimant reported that he had begun gaining weight due to side effects from Depakote and Seroquel, but he "declined medication changes" because the benefits of medication outweighed the side effects (Ex. B2F, p. 10). . . . As discussed, the claimant has requested second-shift work, so that he could manage the side effects of his medication (Ex. B2F, p. 27). . . .

In addition to the psychiatric review technique assessment discussed in the previous finding, the undersigned notes that, in November 2020, the claimant was reporting "shaking" episodes in the morning that he attributed to effects from his medication and he reported an increase in his anxiety (Ex. B9F, p. 9). On January 6, 2021, he was able to get an in-person visit to have his "shaking" evaluated, but he was not exhibiting them at the appointment (Ex. B9F, p. 9). He explained that he experienced the shaking in the morning (Ex. B9F, p. 9). As noted earlier in this decision, the claimant asked his Vocational Rehabilitation Counselor Brandon Wray that he needed a "second shift job due to meds," suggesting that he may have been endorsing the shaking episodes at the time, but they were not totally work preclusive and improved as the day progressed (Ex. B2F, p. 27; SSR 16-3p). The claimant was given a prescription to test his Depakote levels to ensure that he was at an optimal therapeutic level (Ex. B9F, pp. 9-10). As discussed, the claimant did not want to decrease his medication because the benefits outweighed the side effects (Ex. B2F, p. 10). In fact, the record indicates that his Certified Nurse Specialist Lisa Basilli,

4

> CNS, at the Veterans Administration Medical Center increased his medication (Ex. B9F, pp. 9-10). Accordingly, despite the claimant's ability to maintain his commercial driver's license during the current adjudicating period, the undersigned finds that he is precluded from commercial driving due to side effects of his medication (Ex. B2F, p. 14; but see Ex. B2F, p. 27; B9F, pp. 9-11, 12).
>
> Additionally, while the claimant reported a general improvement in his anxiety and his active job search with the assistance of his Vocational Rehabilitation Counselor, the claimant [stated] that his anxiety levels had increased and his shaking episodes would prevent him from working at substantial gainful activity levels reported in January 2021 (Ex. B9F, pp. 9-11; but see generally Exs. B2F, pp. 9-10, 14, 27). The undersigned notes, however, that he endorsed feeling nervous about the upcoming Social Security disability hearing and he was advised to follow-up in eight weeks without the need for any urgent care, suggesting a chronic but not a progressively worsening anxiety-related condition (Ex. B9F, pp. 9-11; SSR 16-3p).
>
> Additionally, in January 2021, the claimant reported Cogentin to his medication regimen, he endorsed an improvement in his mental clarity and thought content, and he denied side effects (Ex. B9F, p. 10). The undersigned finds that the longitudinal effects of his mental impairments with timely adjustments and his ongoing medical compliance have further restricted him to the performance of simple routine repetitive tasks in the manner set forth in this finding.
>
> Additionally, the claimant's ongoing search for a job further establishes that the claimant has the ability to engage in work activity within the scope of the residual functional capacity assessment described in this finding on a regular and continuing basis in a customary work environment (SSR 16-3p).

(ECF No. 9, PageID #: 54–56, 58–59).

C.   **Opinion Evidence at Issue**

On February 16, 2021, Lisa Basilli, CNS, completed a medical source statement. (ECF No. 9, PageID #: 636). She diagnosed Zudell with bipolar I disorder. (ECF No. 9, PageID #: 636). Nurse Basilli stated that the side effects of Zudell's medications were sedation, balance

5

problems, difficulty concentrating, and delays in physical abilities. (ECF No. 9, PageID #: 636). She opined that, due to the effects of his medications, Zudell would have the following limitations: 1) Zudell would need at least four to five breaks a day; 2) he would be off task 20% or more of the work day; 3) he could engage in interactions with his supervisors 55% of the time; 4) he can engage in appropriate interactions with his coworkers less than 55% of the time; and 5) he would be absent at least four times a month due to his mental health. (ECF No. 9, PageID #: 636). Nurse Basilli explained that Zudell's medications were "very sedating" and he had trouble in the mornings. (ECF No. 9, PageID #: 636).

    The ALJ was not persuaded by this opinion. He stated:

> [A]lthough the claimant's medications had a reported sedative side effect, the claimant has decided that he would not like to decrease the therapeutic levels of his medications because their benefits outweighed the side effects, and he has sufficient judgment to accommodate these side effects by working with his Vocational Rehabilitation Counselor to help him find second-shift work (Ex. B7F, p. 1; but see Ex. B2F, pp. 9-10, 14, 27). Accordingly, the undersigned is not persuaded by the vocational impact of Ms. Basilli's medical source statement in light of the claimant's own ability to manage his own needs and his decision not to adjust his medication to a lower therapeutic level.

(ECF No. 9, PageID #: 59).

## IV. The ALJ's Decision

    The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: bipolar disorder, anxiety, and borderline personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can never climb ladders, ropes, or scaffolds. He can never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle. He has the ability to understand, remember, apply information. He can concentrate, persist and maintain pace to perform simple, routine, and repetitive task, but not a production rate pace (i.e., assembly line work). He is limited to simple work-related decision using his judgment and dealing with changes in the work setting. He is able to interact occasionally with supervisors and coworkers, but he can never interact with the public.

(ECF No. 9, PageID #: 54–56).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Zudell raises two issues on appeal. First, Zudell argues that the ALJ failed to account for the side effects of Zudell's medications in determining his RFC. Second, he asserts that the ALJ erred in finding Nurse Basilli's opinion not persuasive. The undersigned will consider Zudell's second assignment of error first.

In his second assignment of error, Zudell argues that the ALJ erred in concluding that Nurse Basilli's opinion was not persuasive. He suggests that the ALJ's analysis of the opinion and reasons for finding that it was not persuasive do not actually undermine the opinion's persuasiveness. The Commissioner responds that the ALJ correctly evaluated the opinion, providing multiple examples of how it was not consistent with or supported by the record.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

As provided above, in a medical source statement Nurse Basilli explained that Zudell

9

experiences side effects of sedation, balance problems, difficulty concentrating, and delays in physical abilities. (ECF No. 9, PageID #: 636). She opined that, due to these side effects, Zudell: 1) would need at least four to five breaks a day; 2) would be off task 20% or more of work day; 3) could engage in interactions with his supervisors 55% of the time; 4) can engage in appropriate interactions with his coworkers less than 55% of the time; and 5) would be absent at least four times a month due to his mental health. (ECF No. 9, PageID #: 636). Nurse Basilli explained that Zudell's medications were "very sedating" and he had trouble in the mornings. (ECF No. 9, PageID #: 636). In concluding that the opinion was not persuasive, the ALJ reasoned:

> [A]lthough the claimant's medications had a reported sedative side effect, the claimant has decided that he would not like to decrease the therapeutic levels of his medications because their benefits outweighed the side effects, and he has sufficient judgment to accommodate these side effects by working with his Vocational Rehabilitation Counselor to help him find second-shift work (Ex. B7F, p. 1; but see Ex. B2F, pp. 9-10, 14, 27). Accordingly, the undersigned is not persuaded by the vocational impact of Ms. Basilli's medical source statement in light of the claimant's own ability to manage his own needs and his decision not to adjust his medication to a lower therapeutic level.

(ECF No. 9, PageID #: 59).

Zudell asserts that the ALJ's given reasons do not actually undermine Nurse Basilli's opinion. First, Zudell notes that he did not decrease his medication because he concluded that the benefits outweighed the side effects. He asserts that "[t]he fact that Mr. Zudell did not want to risk his stability by changing the dose of [his medication] does not reflect on the severity of the medication side effects." (ECF No. 11 at 21). Second, Zudell suggests that the fact that he has the judgment to accommodate his side effects by looking for second-shift work is not relevant because Nurse Basilli did not opine that Zudell was unable to exercise reasonable judgment.

10

Instead, she stated that he would be absent and experience inattention as a result of his medication's side effects—such as sedation. Moreover, the ALJ did not include a second shift limitation, so it is not clear that the jobs identified would allow Zudell to accommodate his side effects in this way. The Commissioner responds that the ALJ explained how Nurse Basilli's "extreme limitations" were inconsistent with the medical evidence. (ECF No. 12 at 16–17). Notably, the Commissioner's argument focuses on the accuracy of the ALJ's statements, rather than their relevance.

The undersigned concludes that Zudell's argument has merit. It is not clear to the undersigned how Nurse Basilli's opined limitations were not supported or consistent with the medical record because the ALJ did not provide a logical bridge for the undersigned to follow. Importantly, Nurse Basilli supported her opinion with findings of Zudell's medication's side effects. These effects include sedation and difficulty concentrating. There is mention of these side effects throughout the record.[1] *See, e.g.*, (ECF No. 9, PageID #: 260, 424, 426, 728).[2] The ALJ did not appear to dispute these findings. Instead, he gave two seemingly irrelevant reasons for discounting Nurse Basilli's opinion. As Zudell properly pointed out, the fact that Zudell chose not to decrease his medication does not undermine Nurse Basilli's opinion. The undersigned finds no support for the ALJ's implied contention that a claimant must decrease a medication's dosage (risking his health) to minimize its side effects.[3] The Commissioner argues

---

[1] Notably, the ALJ failed to explain anywhere in the record why he did not accept Zudell's allegations of sedation, grogginess, or trouble getting up in the morning.

[2] Although there is also evidence of Zudell denying side effects, it is not the undersigned's job to weigh the evidence. The undersigned simply concludes that the ALJ failed to explain his conclusion.

[3] To the extent the ALJ was indicating that Zudell's decision not to decrease his dosage demonstrated Zudell's intact judgment, the undersigned concludes that Zudell's judgment was not relevant to Nurse Basilli's opinion.

that the ALJ's statement meant that Zudell acknowledged the the effectiveness of his medications and the "manageable side effects" by declining medication adjustments. Not only did the ALJ fail to make such a statement, but also the undersigned concludes that such a statement would not be supported by substantial evidence. It would instead be based on an assumption about Zudell's state of mind.

Similarly, the fact that Zudell attempted to find a way to manage his symptoms by working a second shift does not make Nurse Basilli's opinions less persuasive. Simply because Zudell's judgment was not affected by his medication does not mean that his actual side effects (such as sedation) would not take him off task or cause him to be absent. Neither of the ALJ's technically accurate statements have anything to do with the amount of time Zudell would be off task or absent due to his medication's actual side effects. Although the Commissioner attempts to provide reasons for discounting Nurse Basilli's opinion,[4] the undersigned rejects such *post hac* rationalization. *See Williams v. Comm'r of Soc. Sec.*, 227 F. App'x 463, 464 (6th Cir. 2007) (stating that a reviewing court must judge an administrative agency's decision's propriety "solely" on the grounds invoked by the agency (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The ALJ failed to provide a logical bridge explaining why he concluded Nurse Basilli's opinion was not persuasive. The ALJ did not explain anywhere in the opinion why he did not accept Zudell's allegations of sedation such that the undersigned could rely on the explanation to

---

[4] The Commissioner points to evidence of Zudell being described as stable, alert and oriented with an improving mood, appropriate affect, clear speech, normal though content, and other normal findings. The Commissioner also relies on the fact that Zudell's medications were effective. (ECF No. 12 at 18). Not only did the ALJ fail to give these reasons, but also they still do not explain how the medical record supports a finding that Zudell's medication's side effects would not interfere with his ability to perform gainful activity.

support his treatment of Nurse Basilli's opinion.[5] It is not clear why the ALJ did not find Nurse Basilli's opinion persuasive. Thus, the undersigned concludes that the ALJ erred in his consideration of Nurse Basilli's medical opinion.

In the alternative, the Commissioner argues that the alleged error was harmless. The Commissioner states that the limitations suggested by Nurse Basilli that were not adopted in the RFC were based on Zudell's time off-task and his absenteeism. The vocational expert testified that being off-task 10% of the time or absent one day every month would be work preclusive. (ECF No. 9, PageID #: 90). Both of Nurse Basilli's relevant limitations, the Commissioner suggests, are therefore issues reserved to the Commissioner because they are tantamount to an opinion of disability. (ECF No. 12 at 19). The Commissioner correctly notes that the ALJ is not required to discuss issues reserved to the Commissioner. The Commissioner asserts, therefore, that any error was harmless. However, the Court is not convinced by Commissioner's argument.

Although the regulations provide that statements as to whether a claimant is "disabled" or "able to work" are "inherently neither valuable [n]or persuasive" 20 C.F.R. § 404.1520b(c)(3), the undersigned concludes that simply because a vocational expert finds that a certain limitation would preclude work does not mean that the statement was a *per se* finding of disability. Other courts in this district have made similar conclusions. *See Vaughn v. Comm'r of Soc. Sec.*, No. 5:20-CV-02868, 2022 WL 1089256, at *12 (N.D. Ohio Apr. 11, 2022) (Knapp, J.) ("While Dr.

---

[5] The ALJ noted two instances where Zudell denied side effects, considered the sedative medication side effects "non-severe," and stated that Zudell responded "amelioratively" to medication. (ECF No. 9, PageID #: 58–60). However, the ALJ never explained why he rejected Zudell's allegations of sedation or how he came to his conclusion that the side-effects were non-severe, as was his duty. *See Simmons v. Saul*, No. 1:19-CV-00745, 2020 WL 60193, at *11 (N.D. Ohio Jan. 6, 2020) ("Simply reciting conflicting evidence, however, does not satisfy this duty, because unless the ALJ builds a bridge between the evidence and his conclusions, the Court cannot meaningfully review them.").

Karnani's opinion as to likely off-task behavior in excess of 20% per day would preclude competitive work according to the VE testimony in this case (Tr. 119-20), neither the record nor the applicable caselaw support a finding that this opinion was 'tantamount to a disability opinion' reserved to the Commissioner."), *report and recommendation adopted,* No. 5:20CV2868, 2022 WL 1092118 (N.D. Ohio Apr. 12, 2022). There is a difference between suggesting a certain limitation that a vocational expert may find work preclusive and directly stating that a claimant is disabled and cannot work. The undersigned concludes that the difference is significant. Accordingly, the ALJ's failure to build a logical bridge for the Court to understand why he found Nurse Basilli's opinion not persuasive was harmful error. Because Zudell's second assignment of error requires remand, the undersigned will not consider Zudell's first assignment of error.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: August 3, 2022

                                                                 s/ *Carmen E. Henderson*
                                                                 CARMEN E. HENDERSON
                                                                 U.S. MAGISTRATE JUDGE

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).